UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CLYDEL SISTRUNK,

        Plaintiff,

        v.                                    Case No. 23-C-43

CITY OF GREEN BAY and
BASHIR BURUIN,

        Defendants.

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

        This action arises out of the October 23, 2020, traffic stop of a vehicle by Defendant Green Bay Police Officer Bashir Buruin. Plaintiff Clydel Sistrunk, who was a passenger in the vehicle, claims that the stop, which led to state charges against him for possession of Amphetamine/LSD/Psilocin and obstructing an officer, violated his Fourth Amendment rights. Sistrunk alleges that the stop was illegal because Officer Buruin lacked even a reasonable suspicion that the occupants of the vehicle were involved in criminal conduct. Sistrunk sued Officer Buruin for damages under 42 U.S.C. § 1983. He has also sued the City of Green Bay based on its duty to indemnify Officer Buruin pursuant to Wis. Stat. § 895.46 for his liability arising out of his employment. The court has jurisdiction over Sistrunk's civil rights claim pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the indemnification claim pursuant to 28 U.S.C. § 1367. The case is before the court on Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. Defendants maintain that Officer Buruin had reasonable suspicion to conduct the traffic stop and therefore Sistrunk's constitutional rights were not

violated. Alternatively, Defendants contend that Officer Buruin acted in good faith and thus is immune from civil liability. For the following reasons, Defendants' motion for summary judgment will be granted and the case dismissed.

## BACKGROUND

Clydel Sistrunk claims that sometime on October 13, 2020, he met Andre Jackson at a gas station in Green Bay and asked Jackson to give him a ride home. Sistrunk entered the vehicle Jackson was driving, and they left the gas station. Sometime thereafter, and for reasons unknown to Sistrunk, Jackson parked his vehicle near the cul-de-sac on Eastman Avenue. After parking the vehicle, Jackson talked briefly on the phone and then talked with Sistrunk after the phone call ended.

At approximately 4:30 p.m., Officer Buruin was dispatched to the intersection of Eastman Avenue and N. Irwin Avenue to respond to a report of a suspicious vehicle. Officer Buruin was told that a gray SUV with an unknown license plate number was parked at the intersection for about 15 minutes, and that the caller had reported the same gray SUV being parked at the same intersection the previous day. To Officer Buruin's knowledge, the tipster gave no explanation why the SUV was suspicious, nor stated that its occupants were engaging in illegal activity. Officer Buruin received no information that the occupants of the suspicious vehicle had been seen interacting with any pedestrians or engaging in any hand-to-hand transaction.

Officer Buruin arrived at the intersection and drove eastbound into a cul-de-sac at the end of Eastman Avenue where he saw a silver Hyundai SUV parked near the curb. Officer Buruin saw that the SUV matched the description of the reported vehicle and that it was parked where it had been reported to be parked the previous day. Officer Buruin also noted that the SUV was parked

in an area of the City where he was frequently dispatched for narcotic-related calls. He considered the area to be a high-crime area.

As he approached the vehicle, Officer Buruin saw a black male sitting in the driver's seat of the SUV, looking in Officer Buruin's direction. Officer Buruin's dash cam video reveals a residential neighborhood with no businesses in the immediate area. After making eye contact with Officer Buruin, the SUV pulled away from the curb and proceeded to drive forward, following the contour of the cul-de-sac, in the general direction of Officer Buruin's squad car. Rather than continue driving down Eastman Avenue, however, the SUV drove around the cul-de-sac so that, had it continued, it would have been behind Officer Buruin's squad car. Officer Buruin continued to drive his squad car around the cul-de-sac to get behind the SUV. Officer Buruin was concerned for his own safety because the SUV's movement appeared odd to him and he was unable to see what was going on inside the vehicle. He therefore decided to turn on his overhead lights and initiate a traffic stop. Based on the totality of the facts known to him at the time, as well as his training and experience, Officer Buruin believed that he had sufficient reasonable suspicion to conduct a traffic stop and inquire of the driver what was going on.

Officer Buruin immediately called the SUV's license plate number into dispatch and, as he began speaking with Jackson, was notified that the license plate was registered to a stolen vehicle. Officer Buruin then handcuffed Jackson and informed him that he needed to investigate the stolen vehicle report. Jackson informed Officer Buruin that there was a passenger in the SUV. Sistrunk was also handcuffed while the investigation continued. Sistrunk initially provided a false name. Once his real name was discovered and confirmed, an index search revealed that Sistrunk had an out-of-state warrant. Sistrunk was placed under arrest for providing a false name and obstructing a police officer and taken to the Brown County Jail. At the Jail, he was subject to a booking search,

3

which revealed pieces of broken-down pills. The broken-down pills tested positive for Methylenedioxymethamphetamine (MDMA). Sistrunk was charged with possession of Amphetamine/LSD/Psilocin as well as resisting or obstructing a police officer. His attorney filed a motion for suppression of evidence, alleging a violation of Sistrunk's Fourth Amendment rights by conducting an unlawful traffic stop without reasonable suspicion. Following an evidentiary hearing, the Brown County Circuit Court found that Officer Buruin lacked reasonable suspicion to conduct the traffic stop and granted Sistrunk's motion to suppress. The charges were thereafter dismissed.

## LEGAL STANDARD

Summary judgment is proper where there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute is genuine if a reasonable trier of fact could find in favor of the nonmoving party. *Wollenburg v. Comtech Mfg. Co.*, 201 F.3d 973, 975 (7th Cir. 2000). A fact is material only if it might affect the outcome of the case under governing law. *Anweiler v. Am. Elec. Power Serv. Corp.*, 3 F.3d 986, 990 (7th Cir. 1993). In deciding a motion for summary judgment, the court must view the evidence and draw reasonable inferences in the light most favorable to the nonmoving party. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Where a video recording exists, and "[t]here are no allegations or indications that this videotape was doctored or altered in any way, nor any contention that what it depicts

differs from what actually happened," a court must view "the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 378–81 (2007). Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

### A. Terry Stop was Justified

Sistrunk argues that Officer Buruin lacked reasonable suspicion to conduct the traffic stop. The Fourth Amendment guarantees the right of persons to be free from "unreasonable searches and seizures" by the government. U.S. Const. amend. IV. This protection "extend[s] to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). In order to lawfully conduct a brief investigatory stop, however, an officer need not have probable cause, or even a reasonable suspicion, that the person stopped committed a crime. It is enough if the officer has "a reasonable suspicion to believe that criminal activity 'may be afoot.'" *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)); *see also United States v. Place*, 462 U.S. 696, 704 (1983) ("In *Terry*, we described the governmental interests supporting the initial seizure of the person as effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." (internal quotations omitted)); *United States v. Cortez*, 449 U.S. 411, 417 (1981) ("An investigatory stop must be justified by some objective manifestation that the person stopped is, or

is about to be, engaged in criminal activity."). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." *Navarette v. California*, 572 U.S. 393, 397 (2014) (quotation altered).

A reasonable suspicion means "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez*, 449 U.S. at 417–18. A "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" a stop. *Terry*, 392 U.S. at 21–22. Judges must "evaluate the reasonableness of a particular search or seizure in light of the particular circumstances." *Id.* "[T]he facts [must] be judged against an objective standard." *Id.* "But we must not be overly focused on any one factor. The proper analysis involves a consideration of the totality of the circumstances known to the officers at the time of the stop." *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000) (internal quotation marks and citation omitted). "The totality of the circumstances includes the experience of the law enforcement agent and the behavior and characteristics of the suspect." *Id.* (internal quotation marks and citation omitted). "The standard depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Kansas v. Glover*, 140 S. Ct. 1183, 1188 (2020) (internal quotation marks and citation omitted). Rather than demand scientific certainty where none exists, courts "must permit officers to make commonsense judgments and inferences about human behavior." *Id.*

The principles of *Terry* outlined above have been extended to traffic stops. *Arizona v. Johnson*, 555 U.S. 323, 330 (2009). At the same time, courts have recognized that even what may appear to be a routine traffic stop can give rise to a serious risk of harm to the officer making the

6

stop. *See Michigan v. Long*, 463 U.S. 1032, 1047 (1983) (noting Court's recognition "that investigative detentions involving suspects in vehicles are especially fraught with danger to police officers"). The Court has also stressed that "[t]he risk of harm to both the police and the occupants [of a stopped vehicle] is minimized, if the officers routinely exercise unquestioned command of the situation." *Maryland v. Wilson*, 519 U.S. 408, 414 (1997) (internal quotation marks and citation omitted).

As a preliminary matter, Sistrunk concedes that, because the Brown County Circuit Court's ruling on the issue of reasonable suspicion is not binding on this court, the doctrine of issue preclusion does not bar Defendants from litigating this case. Pl.'s Resp. Br. at 27, Dkt. No. 23. Defendants maintain, notwithstanding the state court's conclusion to the contrary, that based on the totality of the circumstances, Officer Buruin had reasonable suspicion to conduct the traffic stop that led to Sistrunk's arrest and discovery of drug possession. Defs.' Br. in Supp. at 14–18, Dkt. No. 19. Although they admit that a report of a "suspicious vehicle" is by itself insufficient to support a finding of reasonable suspicion, *Gentry v. Sevier*, 597 F.3d 838, 845 (7th Cir. 2010), they contend that coupled, with the rest of the facts known to him at the time, Officer Buruin was justified in conducting the traffic stop. Defs.' Br. in Supp. at 14 (citing *Green v. Newport*, 868 F.3d 629, 634–35 (7th Cir. 2017)).

The court agrees that the totality of the circumstances Officer Buruin confronted support a reasonable suspicion to believe that "criminal activity may [have been] afoot." *Terry*, 392 U.S. at 30. These specific and articulable facts include that Officer Buruin knew that the area where the SUV was parked was a high-crime area, based on his experience with narcotics-related calls, and that, upon seeing Officer Buruin, the SUV driver began pulling away from the curb as if he were exiting the cul-de-sac. Further, when Officer Buruin entered the cul-de-sac to get behind the SUV,

7

the driver maneuvered the SUV back into the cul-de-sac, which Officer Buruin found to be both odd and concerning, especially since he was unable to see what was going on in the SUV. It was this odd behavior that led Officer Buruin to activate his emergency lights. Had it not been for the vehicle continuing around the cul-de-sac behind him, Officer Buruin presumably would have called in the license plate and learned that the vehicle was stolen before conducting the stop. In any event, given the route taken by the SUV, it appears it was not trying to leave the area, suggesting that the initial intrusion was slight.

Sistrunk attempts to raise a dispute of material fact by calling into doubt Officer Buruin's knowledge of the area, arguing he lacked sufficient experience to determine whether it was indeed a high-crime area. Pl.'s Resp. Br. at 13–16; Pl.'s Resp. to Defs.' Proposed Findings of Fact (PRDPFOF) ¶¶ 26–27, Dkt. No. 25. Defendants do not dispute that this was one of Officer Buruin's first cases, though it is unclear whether that means among cases that were charged or cases in which he was called upon to testify. Defs.' Resp. to Pl.'s Proposed Additional Findings of Fact (DRPPAFOF) ¶ 11, Dkt. No. 28. But the fact that his arrest of Sistrunk and Jackson was one of Officer Buruin's first cases does not mean he was not aware of the high-crime areas of the City. Likewise, the fact that he could not provide precise crime statistics or exact boundaries of the crime area is simply a reflection of the fact that he was offering a general opinion based on experience and not a scholarly conclusion based on statistical analysis. Sistrunk argues that the fact that Officer Buruin's report made no mention of the area being high-crime raises an issue of fact that precludes summary judgment. Pl.'s Resp. Br. at 13–16; PRDPFOF ¶¶ 26–27. But the fact that a general opinion does not find its way into a police report written about a specific arrest is hardly surprising. Officer Buruin testified both at the suppression hearing and in his deposition
8

that there were frequent calls to the area for narcotics-related crimes. Dkt. Nos. 22-2 at 8:03–09; 16-1 at 4:03–21.

In support of his argument, Sistrunk cites *Beal v. Beller*, 847 F.3d 897, 902–03 (7th Cir. 2017), in which the court concluded a genuine dispute of fact existed over whether a tip on which a detective acted was anonymous or from a known informant. But the court's conclusion in *Beal* did not rest solely on the fact that the officer did not indicate that the informant was known in his report. There was also the fact that a second report the detective supposedly wrote about the substance and source of the tip had disappeared and the prosecutor had refused to identify the alleged tipster at the suppression hearing. *Id.* Moreover, there was nothing suspicious about the situation in *Beal* to corroborate the tip. The plaintiff in that case was simply standing at the end of his aunt's driveway talking to a female relative. *Id.* at 899. Nevertheless, the responding detective immediately grabbed his wrist and, after an initial frisk for weapons, immediately began searching him for drugs. *Id.*

In this case, by contrast, the vehicle was already stopped when Officer Buruin's squad approached the intersection and only began to move when Jackson saw Officer Buruin. Even then, Jackson did not drive away but slowly went around the cul-de-sac, leading Officer Buruin to be concerned for his own safety and only stopping when Officer Buruin activated his emergency lights. Officer Buruin immediately called out the license plate and, within less than two minutes, learned that Jackson has no driver's license and the car he was driving was reported stolen. Dkt. No. 21, Exhibit A at 16:38:02–39:50. At that point, probable cause to arrest Jackson clearly existed. And upon discovering that Sistrunk was a passenger in the vehicle, Officer Buruin was clearly justified in detaining him as well.

Sistrunk argues that, even if the area was high-crime, the stop was unwarranted because Officer Buruin saw nothing indicative of any criminal activity. Pl.'s Resp. Br. at 13. He assumes that officers must have evidence that a crime was committed before a stop is justified. But that is not the law. An articulable suspicion that a person has committed, is committing, or is about to commit a crime is sufficient to justify a brief investigative stop. *United States v. Ruiz*, 785 F.3d 1134, 1141 (7th Cir. 2015). *Terry* involved a person casing a jewelry store. 392 U.S. at 6–7. No crime had yet occurred. Taken in their totality, given the circumstances he confronted in this case, it was not unreasonable for Officer Buruin to ask the driver of the SUV what was going on.

In *Illinois v. Wardlow*, 528 U.S. 119 (2000), the Court noted that "it was not merely respondent's presence in an area of heavy narcotics trafficking that aroused the officers' suspicion, but his unprovoked flight upon noticing the police." *Id.* at 124. The Court noted that its cases had "recognized that nervous, evasive behavior is a pertinent factor in determining reasonable suspicion." *Id.* Flight, the Court observed, is "the consummate act of evasion." *Id.* There are, of course, other kinds of behaviors which are "not necessarily indicative of wrongdoing, but [are] certainly suggestive of such." *Id.* Circling around a cul-de-sac so as to position one's vehicle behind an approaching squad car would seem the kind of behavior that would give rise to a reasonable suspicion on the part of the officer driving the squad car. Together with the tip police received and Officer Buruin's knowledge of the area, his decision to investigate further was reasonable. His conclusion was "based on commonsense judgments and inferences about human behavior." *Glover*, 140 S. Ct. at 1188.

Sistrunk's attempt to explain the SUV's maneuvering as an innocent gesture to make space for Officer Buruin's squad car is unpersuasive. Pl.'s Resp. Br. at 7; Pl.'s Proposed Additional Findings of Fact (PPAFOF) ¶ 23. The video evidence shows that both vehicles would have had

10

room to maneuver within the cul-de-sac. *See Scott*, 550 U.S. at 381 (holding that the court must view "the facts in the light depicted by the videotape"). It was therefore not unreasonable for Officer Buruin to believe that the sequence of maneuvers was odd and constituted nervous, evasive, and possibly dangerous behavior, adding to his suspicion. But even if Jackson's intent was entirely innocent, this is not the kind of dispute that would preclude summary judgment. Officer Buruin was not required to "rule out the possibility of innocent conduct" in order for his suspicion to be reasonable. *Navarette*, 572 U.S. at 403. The idea that he was required to do so seems to have been the assumption underlying the approach taken by the judge in Sistrunk's criminal case in granting his motion to suppress. Dkt. No. 22-2 at 22 (suggesting that the driver of the SUV may have been interested in buying real estate in the area and was jotting down the phone number or evaluating traffic pattern).

Lastly, Sistrunk argues that Officer Buruin had no reasonable basis to fear for his own safety. Pl.'s Resp. Br. at 19–21. Specifically, he attempts to dispute the fact that Officer Buruin was unable to see what was happening inside the vehicle. *Id.* at 20; PRDPFOF ¶ 32. But again, the evidence cited does not establish the presence of a genuine dispute because it fails to contradict or significantly challenge the veracity of Officer Buruin's testimony. If anything, the fact that Officer Buruin did not find out that there was a passenger in the SUV until after he initiated the traffic stop corroborates his assertion that he was unable to see what was happening inside the SUV. Further, Sistrunk argues that officer safety is only a relevant factor to warrant a pat-down search of someone already detained, and it is not an independent ground to justify a preemptive stop. Pl.'s Resp. Br. at 20. But the same factor can help justify both a seizure and a search. In light of all of the other factors that aroused Officer Buruin's suspicion, a fear for his own safety would naturally suggest that criminal activity may be afoot. In sum, under the totality of the

11

circumstances, the court concludes that Officer Buruin had the requisite reasonable suspicion to conduct the traffic stop.

### B. Qualified Immunity

Alternatively, Defendants argue that Sistrunk's claims should be dismissed because Officer Buruin is entitled to qualified immunity. Under this doctrine, government officials performing discretionary functions are immune from civil liability for constitutional violations "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (*per curiam*) (quoting *White v. Pauly*, 580 U.S. 73, 78–79 (2017) (*per curiam*)). The doctrine strikes a balance between the public interest in safeguarding constitutional guarantees on the one hand and, on the other, the concern that subjecting government officials to personal liability and harassing litigation would inhibit them in discharging their duties. *Id.*

Although qualified immunity is a defense to a § 1983 suit, the plaintiff has the burden to overcome the defense. *Spiegel v. Cortese*, 196 F.3d 717, 723 (7th Cir. 1999). The plaintiff must show the deprivation of a constitutional or statutory right that was clearly established at the time of the defendant's conduct. *Saucier v. Katz*, 533 U.S. 194, 201–02 (2001). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (*per curiam*) (internal quotations omitted). "The inquiry into whether a right is clearly established 'must be undertaken in light of the specific context of the case, not as a broad general proposition.'" *Green*, 868 F.3d at 635 (quoting *Mullenix*, 577 U.S. at 11). "A clearly established right is one that is dictated by

12

controlling authority or a robust consensus of cases of persuasive authority." *Henry v. Hulett*, 969 F.3d 769, 785 (7th Cir. 2020) (internal quotation marks and citation omitted). In recent years, the Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality" and has reversed lower courts in qualified immunity cases where they "wrongly subject individual officers to liability." *City & Cnty. of San Francisco v. Sheehan*, 575 U.S. 600, 611 & n.3 (2015) (quotation marks omitted). The Supreme Court has instructed: "An officer cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in his shoes would have understood that he was violating it, meaning that existing precedent placed the statutory or constitutional question beyond debate. This exacting standard gives government officials breathing room to make reasonable but mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Id.* (internal quotation marks and citation omitted).

In other words, the court must determine whether a constitutional rule applies with such clarity that it placed Officer Buruin on notice that his conduct was unlawful. Sistrunk asserts that Defendants' arguments for qualified immunity fail because the applicable caselaw established "that an officer does not have reasonable suspicion based upon a generalized tip of a suspicious person or vehicle." Pl.'s Resp. Br. at 24. In support, he relies on *Gentry v. Servier*, 597 F.3d 838 (7th Cir. 2010), and *United States v. Packer*, 15 F.3d 654 (7th Cir. 1994). *Id.* Framed this way, Sistrunk defines his "Fourth Amendment right without the requisite specificity" and relies upon cases that are "factually dissimilar to the facts in this case." *Green*, 868 F.3d at 633. In both *Gentry* and *Packer*, officers lacked reasonable suspicion when they conducted a stop based solely on a general reference to a suspicious person or vehicle, without any specific facts that suggested criminal activity was afoot. 597 F.3d at 843, 845–46; 15 F.3d at 658–59. As explained above,

13

Officer Buruin had more than a tip about a suspicious vehicle to support his suspicion. He had knowledge that the SUV was parked in a high-crime area for narcotic calls, it had been parked in the same spot the day before, and the driver initially engaged in evasive behavior upon seeing Officer Buruin but then pulled around the cul-de-sac behind Officer Buruin, causing him to fear for his safety when he was unable to see what was happening inside of the SUV. If those specific and articulable facts do not meet the reasonable suspicion standard, they are at least sufficient to give rise to a reasonable belief that the limited intrusion undertaken by Officer Buruin was justified under *Terry* and its progeny. Officer Buruin is therefore immune from liability for any violation that occurred.

### C. Indemnification Claim

Sistrunk also brought an indemnification claim pursuant to Wis. Stat. § 895.46 against the City of Green Bay. Sistrunk agrees that, if the court grants Defendants' motion for summary judgment as to the § 1983 claim, the indemnification claim must also be dismissed. Pl.'s Resp. Br. at 26. Accordingly, Sistrunk's indemnification claim is dismissed.

### CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Dkt. No. 15) is **GRANTED** and the case is **DISMISSED**. The Clerk is directed to enter judgment forthwith.

**SO ORDERED** at Green Bay, Wisconsin this 29th day of January, 2024.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge